IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Case No. 4:20-cv-00041-M

| | | |
|---|---|---|
| COLUMBUS LIFE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | **OPINION** |
| v. | ) ) ) | **AND ORDER** |
| WELLS FARGO BANK, N.A., as Securities Intermediary, | ) ) ) ) | |
| Defendant. | ) | |

This action was brought under the Declaratory Judgment Act seeking to contest a life-insurance policy. For the reasons that follow, the court: (1) declines to adjudicate the declaratory claims; and (2) abstains from adjudicating the legal and equitable counterclaims pending state-court resolution of an unsettled question regarding a significant North Carolina state policy.

**I.  Background**

On May 15, 2020, Plaintiff Columbus Life Insurance Company filed an amended complaint seeking a judgment declaring that an insurance policy it issued, and to which Defendant Wells Fargo Bank, N.A. holds title, is void. [DE-6] Plaintiff alleges that: (1) the policy at issue is a so-called stranger-originated life-insurance ("STOLI") policy; and (2) STOLI policies are void as a matter of public policy and unenforceable under North Carolina law. [DE-6]

On June 25, 2020, Defendant filed an amended answer to Plaintiff's amended complaint in which Defendant: (1) raised affirmative defenses to Plaintiff's declaratory claims, including that the policy at issue

1

"is incontestable" [DE-15 at 14]; and (2) brought counterclaims against Plaintiff for breach of contract and unjust enrichment in connection with the policy [DE-15 at 17–18].

On July 17, 2020, Plaintiff: (1) moved to strike certain of Defendant's affirmative defenses, including the incontestability defense, under Federal Rule of Civil Procedure 12(f) [DE-18]; and (2) moved to dismiss Defendant's counterclaims for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) [DE-20]. This matter comes before the court on Plaintiff's motions.

## II. Analysis

### a. Plaintiff's declaratory claims

By seeking declaratory relief in this court, Plaintiff has implicitly invoked the federal Declaratory Judgment Act (the "DJA"), 28 U.S.C. § 2201. The DJA provides as follows:

> In a case of actual controversy within its jurisdiction . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). The court is satisfied that Plaintiff's amended complaint appropriately pleads an actual controversy that is within the court's diversity jurisdiction under 28 U.S.C. § 1332. [*see* DE-32]

A threshold question is whether the court, having jurisdiction to do so, should decide to hear the case. It is well-established that the DJA does not oblige federal courts to make any declarations of rights, but rather gives federal courts the power to make such declarations should they elect to do so in the exercise of their sound discretion. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 287 (1995) ("district courts possess discretion in determining whether and when to entertain an action under the [DJA], even when the suit otherwise satisfies subject matter jurisdictional prerequisites. . . . We have repeatedly characterized the [DJA] as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the

2

litigant.'" (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)); *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998) ("The [DJA] provides that district courts 'may declare' the rights of interested parties. This permissive language has long been interpreted to provide discretionary authority to district courts to hear declaratory judgment cases.").

The Fourth Circuit long ago said that a district court should hear a declaratory-judgment action when the judgment sought would (1) "serve a useful purpose in clarifying and settling the legal relations in issue" and (2) "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937) (quotation marks and citation omitted). But the *Quarles* court also said that the DJA should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." *Id.*

Declaratory-judgment actions seeking adjudication of state-law issues that are brought in federal court pursuant to diversity jurisdiction require additional considerations:

> [W]hen a federal court is confronted with an insurer's request for a declaratory judgment on coverage issues during the pendency of related litigation in the state courts, its discretion must be guided not only by the criteria outlined in *Quarles*, which focus on the general utility of the declaratory relief sought, but also by the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts.

*Nautilus Ins. Co. v. Winchester Homes*, 15 F.3d 371, 376 (4th Cir. 1994). The "considerations of federalism, efficiency, and comity" that district courts must consider in deciding whether to hear a declaratory-judgment action involving state-law causes of action—the so-called *Nautilus* factors—have been articulated by the Fourth Circuit as follows:

(i)     the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

3

(ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending;

(iii) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law; and

(iv) whether the declaratory judgment action is being used merely as a device for procedural fencing--that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable.

*Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996) (quoting *Nautilus*, 15 F.3d at 377 (internal quotation marks and brackets omitted)). Although the *Nautilus* factors speak to pending state action, the Fourth Circuit has made clear that the same factors are to be considered where there is no state action pending. *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 424 (4th Cir. 1998) ("a district court does not per se overstep the bounds of its discretion when it dismisses a declaratory judgment action in the absence of a pending parallel state court proceeding. Rather, such a dismissal is within the district court's discretion, and that discretion is not abused so long as the factors which we have enumerated to guide district courts in this determination weigh in favor of denying declaratory relief.").

In the amended complaint, Plaintiff seeks to prospectively establish a defense to an action to enforce the life-insurance policy. Defendant's incontestability defense is in essence a defense to Plaintiff's defense, with which Defendant could keep Plaintiff from being able to contest the policy's validity on the grounds raised in the amended complaint. The viability of Defendant's incontestability defense is therefore potentially dispositive of this dispute.[1]

Plaintiff argues that the court should strike Defendant's incontestability defense as invalid because: (1) if Plaintiff is able to establish that the policy at issue is a STOLI policy, the policy would be *void ab*

---

[1] *See infra* Section II(b) (discussing Defendant's counterclaims).

4

*initio* as a matter of North Carolina[2] public policy as an insurance contract issued without "insurable interest," *see Vance v. Wiley T. Booth, Inc.*, 112 N.C. App. 600, 602–03, 436 S.E.2d 256, 258 (1993) (discussing "insurable interest"); and (2) a party cannot use an incontestability clause in a life-insurance policy to overcome a defense that such a contract is invalid and unenforceable for lack of insurable interest. [DE-19 at 18–20] Both of Plaintiff's arguments find support in certain opinions from the North Carolina Supreme Court, most notably *Wharton v. Home Sec. Life Ins. Co.*, 206 N.C. 254, 173 S.E. 338 (1934).

In *Wharton*, the beneficiary of a life-insurance policy sued the insurer seeking the proceeds of the policy. *Id.* at 256, 173 S.E. at 339. The jury rendered a verdict in the beneficiary's favor, and the insurer appealed the resulting judgment, which ultimately reached the North Carolina Supreme Court. *Id.* The *Wharton* court first said:

> It is well settled as the law in this and other jurisdictions that a person cannot take out a valid and enforceable policy of insurance for his own benefit on the life of a person in which he has no insurable interest; such a policy or contract of insurance is void and unenforceable on grounds of public policy, it being merely a wagering contract.

*Id.* The court noted that the beneficiary conceded that the policy was issued without insurable interest, but that she argued "that the principle is not applicable because of the presence in the policy of the incontestable clause" which stated that "[a]fter this policy has been in force for two full years, it shall be incontestable except for nonpayment of premiums, fraud, misstatement of age or violation of article third."[3] *Id.* at 255–56, 173 S.E. at 338–39. The court rejected the beneficiary's incontestability argument as follows:

> This contention cannot be sustained. The parties to a contract which is void because in contravention of a well settled public policy, cannot bind themselves by such contract, and thus deprive the courts of the power to enforce the public policy of

---

[2] The parties agree that the substantive law of North Carolina governs this dispute. [DE-19 at 18; DE-24 at 18]

[3] The *Wharton* opinion does not specify what "article third" of the contract there at issue concerned, but the court does not consider that important.

5

the State by their judgments. . . . If at any time it appears in the process of the action that the contract sued upon is one which the law forbids, the Court will refuse relief.

*Id.* at 256–57, 173 S.E. at 339. The judgment for the beneficiary was accordingly reversed. *Id.*

Plaintiff relies heavily on *Wharton*'s holding that an incontestability clause in a contract cannot overcome a defense that the contract "is void because in contravention of a well settled public policy" (the "*Wharton* rule"). *Id.* Defendant counters that: (1) *Wharton* has not been cited by any North Carolina court in more than 50 years; and (2) the North Carolina General Assembly, by enacting N.C. Gen. Stat. § 58-58-22 in 1995, abrogated the *Wharton* rule in the life-insurance-policy context. [DE-24 at 17–22] N.C. Gen. Stat. § 58-58-22 sets forth as follows:

> No policy of individual life insurance shall be delivered in this State unless it contains in substance the following provisions, or provisions that in the Commissioner's opinion are more favorable to the person insured:
>
> . . .
>
> (2) Incontestability. — A provision that the validity of the policy shall not be contested, except for nonpayment of premium, once it has been in force for two years after its date of issue[.]

N.C. Gen. Stat. § 58-58-22(2). Since it is uncontested that the policy at issue was delivered in North Carolina sometime in 2004–05 [DE-6 ¶¶ 10–17]—and thus long following N.C. Gen. Stat. § 58-58-22(2)'s enactment in 1995—Defendant argues that the policy became incontestable by 2007 "except for nonpayment of premium[.]" [DE-24 at 17–18] And because Plaintiff's declaratory-judgment action seeks to establish that the policy at issue is invalid for another reason, Defendant argues that Plaintiff's request for declaratory relief must be rejected.

The North Carolina Supreme Court has said that "it is well settled that North Carolina common law may be modified or repealed by the [North Carolina] General Assembly, except for any parts of the common law which are incorporated in [the North Carolina] Constitution." *Rhyne v. K-Mart Corp.*, 358 N.C. 160,

6

169, 594 S.E.2d 1, 8 (2004) (internal quotation marks, brackets, and citation omitted). The *Rhyne* court said that "[t]he legislative branch of government is without question the policy-making agency of our government, and when it elects to legislate in respect to the subject matter of any common law rule, the statute supplants the common law rule and becomes the public policy of the State in respect to that particular matter." *Id.* (internal quotation marks and citation omitted). The North Carolina Constitution contains certain provisions regarding life-insurance policies, *see* N.C. Const. Art. X § 5, but does not incorporate: (1) any rights of insurers to contest life-insurance policies; or (2) any rights of contractual counterparties to contest or enforce contracts more generally. Because the North Carolina Constitution therefore does not incorporate the *Wharton* rule, "the common law rule" was arguably "supplant[ed]" in the life-insurance-policy context by N.C. Gen. Stat. § 58-58-22(2)'s enactment. *Rhyne*, 358 N.C. at 169, 594 S.E.2d at 8.

Indeed, since incontestability clauses could be worded more broadly than the incontestability provision contemplated by N.C. Gen. Stat. § 58-58-22(2) (as evinced by the above-described clause at issue in *Wharton*), Defendant has a strong argument that the North Carolina General Assembly changed the public policy of the state regarding when and how life-insurance policies may be contested by enacting the statute, narrowing the law such that the only viable defense that may now be raised by an insurer to contest a life-insurance policy following the two-year statutory period is the nonpayment of insurance premiums. After all, the incontestability provision in *Wharton* was a mere agreement between contractual counterparties, which agreement the court held was insufficient to trump the state's "well settled public policy[,]" *Wharton*, 206 N.C. at 256–57, 173 S.E. at 339, whereas the incontestability provision here at issue[4] is required and governed by statute, which *is* the state's public policy.

---

[4] Neither party has proffered the policy to the court at this juncture, but the court assumes from the parties' arguments that the policy here at issue is compliant with N.C. Gen. Stat. § 58-58-22(2) and includes the required provision.

7

But neither party directs the court's attention to any case law discussing N.C. Gen. Stat. § 58-58-22(2)'s impact upon the *Wharton* rule, or any other North Carolina authority addressing the question of whether an incontestability clause in a life-insurance policy can overcome a defense that the policy is void as a matter of public policy for lack of insurable interest—or that the policy is invalid for any other reason except the nonpayment of premiums—following N.C. Gen. Stat. § 58-58-22(2)'s enactment (the "*Wharton*-rule issue"). Defendant concedes that the law is unsettled on this score. [DE-24 at 19, 21] Plaintiff relies on decisions from the high courts of Delaware and New Jersey in arguing that "the weight of other authority" supports its position. [*see* DE-19 at 20 (discussing *PHL Variable Insurance Company v. Price Dawe 2006 Insurance Trust*, 28 A.3d 1059 (Del. 2011) and *Sun Life Assurance Company of Canada v. Wells Fargo Bank, National Association*, 208 A.3d 839 (N.J. 2019)). In so doing, Plaintiff effectively concedes that the question has not been addressed by North Carolina courts. The court has considered the arguments of the parties' able counsel, but after conducting its own independent research, the court concludes that the *Wharton*-rule issue is unsettled such that the court would have to resolve a novel question of state law to adjudicate Plaintiff's declaratory claims.

In *Mitcheson v. Harris*, 955 F.2d 235 (4th Cir. 1992), the Fourth Circuit discussed the competing federal and state interests when a federal court sitting in diversity is asked to issue a declaratory judgment regarding questions of state law. *Id.* at 237–38. The *Mitcheson* court noted that, by conferring diversity jurisdiction upon the federal courts in Article III, the United States Constitution clearly expressed the "paramount federal interests in having federal courts resolve questions of state law and accord protection to out-of-state parties." *Id.* at 237. But the court also recognized that "[t]here exists an interest in having the most authoritative voice speak on the meaning of applicable law, and that voice belongs to the state courts when state law controls the resolution of the case[,]" noting that in other contexts the Supreme Court had "stated that . . . federal court[s] should frequently exercise [their] discretion to dismiss [a] case in order

8

to avoid 'needless decisions of state law' when a state court could provide 'a surer-footed reading'" thereof. *Id.* at 237–38 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Because only state-law claims were there at issue, and in recognition of a pending state action on related claims, the *Mitcheson* court stated:

> Absent a strong countervailing federal interest, the federal court here should not elbow its way into this controversy to render what may be an "uncertain and ephemeral" interpretation of state law.

*Id.* at 238 (quoting *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 122 n.32 (1984)). Finding no strong countervailing federal interest, the *Mitcheson* court concluded that "the state interest in resolving matters of state law should have guided the exercise of federal judicial discretion[,]" and reversed the district court with instructions to dismiss the declaratory action upon remand. *Id.* at 238.

In *Nautilus*, the Fourth Circuit applied *Mitcheson* in concluding that there was not a state interest in having the state-law questions there at issue answered by the state's courts that was sufficiently compelling to justify a refusal to hear the declaratory suit. 15 F.3d at 377–78. The *Nautilus* court reached this conclusion because the state-law questions "involve[d] the routine application of settled principles of law to particular disputed facts[,]" noting that "[i]n analogous situations in which a federal court possesses discretionary power to abstain from deciding state-law questions otherwise properly within its jurisdiction, that discretion may be exercised only when the questions of state law involved are difficult, complex, or unsettled." *Id.* at 378.

Plaintiff seeks a declaration that the policy at issue is a void STOLI policy. Were the court to so rule and grant Plaintiff the declaratory judgment it seeks, the question would remain whether Defendant could initiate a lawsuit for breach of the policy and, by invoking the incontestability defense, keep Plaintiff from using the judgment as a defense to that lawsuit. Thus, without a ruling on Defendant's incontestability defense—and thus a resolution of the unsettled *Wharton*-rule issue—the judgment Plaintiff seeks would

9

neither "serve a useful purpose in clarifying and settling the legal relations in issue . . . [nor] terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding[,]" but would likely rather result in "try[ing the] controversy by piecemeal, or . . . try[ing] particular issues without settling the entire controversy[.]" *Quarles*, 92 F.2d at 325 (citations omitted). Such a judgment would therefore not be the sort that the court should consider granting under *Quarles*.

If the court were to resolve the *Wharton*-rule issue, the resulting judgment would settle the issue between the parties within the meaning of *Quarles*. *See Kapiloff*, 155 F.3d at 494 ("It is well established that a declaration of parties' rights under an insurance policy is an appropriate use of the declaratory judgment mechanism."). But resolving the unsettled issue would require an "uncertain and ephemeral interpretation of state law[,]" which *Mitcheson* says courts should avoid undertaking unless "a strong countervailing federal interest" militates otherwise. 955 F.2d at 238 (quotation marks and citation omitted). The court discerns no strong countervailing federal interest here. As in *Mitcheson*, "the only federal interest at issue in this case is the same interest federal courts have in deciding any diversity case." *Id.*

In light of *Quarles*, *Mitcheson*, and *Nautilus*, the court accordingly concludes that North Carolina courts should resolve the *Wharton*-rule issue. As noted above, the first of the *Nautilus* factors that the court must consider in a case like this concerns "the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts[.]" *Centennial Life*, 88 F.3d at 257. North Carolina's interest in resolving the unsettled *Wharton*-rule issue is very strong. *See Hartford Fire Ins. Co. v. Kinston Plumbing & Heating Co.*, 868 F. Supp. 120, 122 (E.D.N.C. 1994) (dismissing DJA action in exercise of discretion because the court "would be forced to speculate" regarding a question of first impression under North Carolina law, about which the state's interest was "crucial"); *cf. Kapiloff*, 155 F.3d at 494 (finding "the interests of Maryland in deciding this case were not particularly significant" because the state-law issues were "standard" and the "federal court would [therefore] be unlikely to break new

10

ground or be faced with novel issues of state interest"). Concerning the rest of the *Nautilus* factors, although the court is aware of no pending state action such that a ruling by this court would necessarily risk (2) causing unnecessary inefficiency or (3) entangling the federal and state court systems, and (4) the court does not conclude that Plaintiff's DJA action is mere device to procedurally fence in Defendant, the court concludes that these considerations do not outweigh (1) North Carolina's very-strong interest in resolving the *Wharton*-rule issue. *See Hartford, supra*; *Ind-Com*, 139 F.3d at 423–24 (affirming discretionary refusal to hear declaratory action in absence of parallel state proceeding where the "case raises important issues of unclear state law in which the state of North Carolina has an important interest[,]" agreeing with the district court that "the existence or nonexistence of a state court action is simply one consideration relevant to whether to grant declaratory relief."); *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 141, 144–45 (3d Cir. 2014) (following *Ind-Com* and affirming discretionary refusal to hear declaratory claims in absence of parallel state proceeding in light of unsettled question of Pennsylvania law: "[W]hen applicable state law is uncertain or undetermined, district courts should be particularly reluctant to exercise DJA jurisdiction. Rather, the proper relationship between federal and state courts requires district courts to step back and permit state courts to resolve unsettled state law matters." (internal quotation marks and citations omitted)).

In sum, North Carolina's very-strong interest in resolving the unsettled *Wharton*-rule issue guides the court's decision to decline, in its discretion, to adjudicate Plaintiff's declaratory claims.[5]

### b. *Defendant's counterclaims*

Because Defendant has filed counterclaims for non-declaratory relief, the court cannot decline to adjudicate those claims in the exercise of the discretion afforded by 28 U.S.C. § 2201(a). *See Beaufort*

---

[5] The court notes that, unlike other states, there exists no mechanism allowing federal courts to certify questions of North Carolina law to North Carolina's courts, *see Colony Ins. Co. v. Peterson*, 582 F. App'x 156, 160 n.2 (4th Cir. 2014), and that Plaintiff accordingly must seek its declaratory judgment, if at all, in North Carolina state court.

11

*Dedicated No. 5 Ltd. v. Bradley*, No. 1:11-cv-673, 2012 U.S. Dist. LEXIS 110946, at *20 (M.D.N.C. Aug. 8, 2012) ("Abstention considerations with respect to nondeclaratory claims are usually undertaken pursuant to . . . a more demanding standard for abstention"). Nevertheless, the court concludes that it should abstain from hearing Defendant's legal and equitable counterclaims as well, for essentially the same reasons discussed above in Section II(a), but on a different jurisprudential basis.[6]

As with Plaintiff's declaratory claims, adjudication of Defendant's counterclaims depends upon resolution of the *Wharton*-rule issue. A ruling that the *Wharton* rule endures in the life-insurance context, and that the policy at issue is therefore contestable as void as a matter of public policy, means that Defendant's breach-of-contract counterclaim would fail if the policy is proven void as Plaintiff alleges. *Wharton*, 206 N.C. at 256–57, 173 S.E. at 339. On the other hand, Defendant's unjust-enrichment counterclaim—which is pleaded "[i]n the alternative, should the Policy be held to be void" [DE-15 at 18 ¶ 25]—would be rendered unviable by a ruling that the *Wharton* rule was abrogated in the life-insurance context by N.C. Gen. Stat. § 58-22-22(2). In that case: (1) the policy would be incontestable (on the grounds alleged) by Plaintiff, who would be thereafter obligated to pay the proceeds of the policy pursuant to the terms of the contract; and (2) the premium payments made as consideration for the policy would plainly not have enriched Plaintiff unjustly. *See JPmorgan Chase Bank, Nat'l Ass'n v. Browning*, 230 N.C. App. 537, 542, 750 S.E.2d 555, 560 (2013) (unjust enrichment claim only viable "where it would be unfair for the recipient to retain" the benefits received). The court is therefore again faced with the same uncertainty raised by Plaintiff's claims seeking declaratory relief.

---

[6] Although neither party has argued in favor of abstention, the court may elect to abstain *sua sponte*. *Front Royal & Warren Cnty. Indus. Park Corp. v. Town of Front Royal*, 945 F.2d 760, 763 (4th Cir. 1991) ("we may apply the abstention doctrine at our own instance even if no party urges the doctrine upon us").

12

The Fourth Circuit recently noted that "even where jurisdiction is not discretionary, courts may abstain from exercising jurisdiction under certain circumstances that may intrude on the prerogative of state courts." *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 201–02 (4th Cir. 2019) (citing to the Supreme Court's decisions in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976); *Younger v. Harris*, 401 U.S. 37 (1971); *Louisiana Power & Light Company v. City of Thibodaux*, 360 U.S. 25 (1959); *Burford v. Sun Oil Company*, 319 U.S. 315 (1943); and *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496 (1941)). In *Thibodaux*, the Supreme Court held that federal courts sitting in diversity may abstain from ruling upon a "doubtful and unsettled" question of state law that is "intimately involved with sovereign prerogative" and await the question's resolution in the state courts, in order to avoid "mak[ing] a dubious and tentative forecast" regarding the answer. *Thibodaux*, 360 U.S. at 27 n.2, 28–29; *see Colo. River*, 424 U.S. at 814 (*Thibodaux* "[a]bstention is . . . appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." (citing *Thibodaux*)). *Thibodaux* abstention is undertaken "in regard for the respective competence of the state and federal court systems and for the maintenance of harmonious federal-state relations in a matter close to the political interests of a State[,]" and is applicable to both legal and equitable claims. *Thibodaux*, 360 U.S. at 29.

The Fourth Circuit has said that *Thibodaux* abstention is appropriate in diversity cases where:

(1) state law is unsettled, and

(2) an incorrect federal decision might embarrass or disrupt significant state policies.

*Nature Conservancy v. Machipongo Club, Inc.*, 579 F.2d 873, 875 (4th Cir.) (*per curiam*), *cert. denied*, 439 U.S. 1047 (1978). In *Machipongo*, a case involving a dispute about ownership of a beach-access road in Virginia, the Fourth Circuit ruled that *Thibodaux* abstention was appropriate for the following reasons:

13

> Abstention in this case is proper with regard to the issues of statutory interpretation that relate to the ownership of the beaches and the meadow and marshlands. The interpretation of the statutes [at issue] is unsettled, so a federal court would be required to reach its judgment without any guidance from the authoritative tribunal, and the issue of the ownership of the beaches and meadow and marshlands raises fundamental questions of public policy that should be resolved in the first instance by the state courts. With respect to the ownership of the beaches, meadow and marshlands, we are not unmindful that an incorrect federal decision might adversely affect property owners throughout all of Virginia's coastal regions.

*Id.* at 875–76. The *Machipongo* court accordingly remanded the case to the district court with instructions to stay its judgment pending a final decision by the Supreme Court of Virginia on the statutory-interpretation issues. *Id.*

*Thibodaux* abstention is similarly appropriate here. First, the *Wharton*-rule issue is an unsettled question of North Carolina law, as explained in detail above. *See supra* Section II(a). And second, when and how insurers can contest life-insurance policies delivered in North Carolina—a question that the *Wharton*-rule issue leaves unsettled—is a policy that is significant to North Carolina. Regulation of the insurance industry is a sovereign prerogative that Congress has expressly reserved to the states, *see* 15 U.S.C. §§ 1011–12 ("Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States."), because of the states' fundamental interests in protecting their citizens, *see Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1406 (9th Cir. 1986) (recognizing "the strong state interest in regulating insurance which concerns the 'lives and limbs' of the public"). That North Carolina considers it important to regulate its insurance industry—including concerning the specific aspect of insurance law implicated by the *Wharton*-rule issue—is demonstrated by the fact that the North Carolina General Assembly felt it necessary to enact N.C. Gen. Stat. § 58-58-22(2) to require incontestability clauses in all life-insurance policies delivered within the state. Accordingly, the state policy here at issue is clearly

14

significant within the meaning of *Machipongo*, and has "substantial public import . . . transcend[ing] the result in the case . . . at bar."[7] *Colo. River*, 424 U.S. at 814 (describing the state policies that implicate *Thibodaux* abstention); *see Charleston Area Med. Ctr. v. Blue Cross & Blue Shield Mut.*, 6 F.3d 243, 250 n.5 (4th Cir. 1993) (noting in *obiter dictum* that "[w]e are troubled by the district court's alleged abuse of discretion in denying the defendant's motion to abstain" because, *inter alia*, the "case by necessity entails an analysis of the regulation of the insurance industry in West Virginia -- a complex state statutory scheme involving policy problems of substantial public import and state interest. We believe this case presents precisely the type of litigation in which federal courts should carefully consider abstaining.").

Because adjudicating Defendant's counterclaims would inevitably require the court to make a tentative forecast regarding an unsettled question of law concerning a significant North Carolina state policy, the court abstains from adjudicating Defendant's counterclaims under *Thibodaux*.

## III.  Conclusion

For the foregoing reasons, the court DISMISSES Plaintiff's declaratory claims and STAYS adjudication of Defendant's counterclaims pending a ruling by the North Carolina Supreme Court regarding the *Wharton*-rule issue.[8] Plaintiff's: (1) amended complaint [DE-6] is DISMISSED without prejudice to

---

[7] The court notes that the parties in this case are engaged in other litigation directly implicating the *Wharton*-rule issue, in at least one other case with virtually-identical facts and issues which is also pending in this court. *See Columbus Life Ins. Co. v. Wells Fargo Bank, Nat'l Ass'n*, 4:20-cv-00073-M (E.D.N.C.) (filed May 4, 2020), at Dkt. 10–11 (motion to dismiss on N.C. Gen. Stat. § 58-58-22(2) incontestability grounds). This fact makes clear that an incorrect decision would have import extending beyond the instant dispute, and weighs in favor of abstention. *See Hartford Cas. Ins. Co. v. Borg-Warner Corp.*, 913 F.2d 419, 426 (7th Cir. 1990) (affirming *Burford* abstention in insurance-regulation dispute: "The importance of the state policies at issue, however, go far beyond the present litigation. It is these larger policies that we must consider, and not the comparatively small stakes of this litigation.").

[8] The court lacks the power to dismiss Defendant's legal counterclaim for damages. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730–31 (1996) ("we have permitted federal courts applying abstention principles in damages actions to enter a stay, but we have not permitted them to dismiss the action altogether

15

file in state court, (2) motion to strike Defendant's affirmative defenses [DE-18] is DISMISSED AS MOOT; (3) motion to dismiss Defendant's counterclaims [DE-20] is DENIED with leave to refile following the aforementioned ruling; and (4) motion to file an amended pleading [DE-33] is DENIED.

SO ORDERED this the 8th day of December, 2020.

RICHARD E. MYERS II
UNITED STATES DISTRICT JUDGE

---

... federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary"). While the court has the power to dismiss Defendant's equitable counterclaim for unjust enrichment, *id.*, it elects to stay adjudication of that claim, as well.

16